1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ERNEST MAEA,                              Case No.  1:22-cv-00362-KES-HBK (PC)

12              Plaintiff,                      ORDER GRANTING DEFENDANTS'
                                                MOTION FOR JUDICIAL NOTICE
13        v.
                                                (Doc. No. 42-3)
14   CHRISTIAN PFEIFFER, et al.,
                                                FINDINGS AND RECOMMENDATIONS TO
15              Defendants.                     GRANT IN PART DEFENDANTS'
                                                EXHAUSTION BASED MOTION FOR
16                                              SUMMARY JUDGMENT[1]

17                                              (Doc. No. 42)

18                                              14-DAY DEADLINE

19

20

21        Pending before the Court is the Motion for Summary Judgment filed by Defendants

22   Michael Felder, Christian Pfeiffer, Lt. A. Martinez, Sgt. J. Anderson, and Capt. D. Goree on

23   August 14, 2023.  (Doc. No. 42, "MSJ").  Included within Defendants' Motion is a Motion for

24   Judicial Notice.  (Doc. No. 42-3).  Plaintiff, represented by counsel, filed an Opposition (Doc. No.

25   56), and Defendant filed a Reply (Doc. No. 57).  For the reasons set forth below, the undersigned

26

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).

1  grants the Motion for Judicial Notice and recommends Defendants' MSJ be granted in part and

2  denied in part.

## I.      BACKGROUND

### A.  Summary of Plaintiff's Operative Complaint

Plaintiff Ernest Maea ("Plaintiff" or "Maea"), a state prisoner represented by counsel proceeds on his First Amended Complaint filed pursuant to 42 U.S.C § 1983.  (Doc. No. 8, "FAC").  The events giving rise to Plaintiff's claims occurred at Kern Valley State Prison ("KVSP").  (*Id*. at 2).  The FAC remains pending[2] against the following as Defendants in their individual capacities: (1) KVSP Warden Christian Pfeiffer[3]; (2) KVSP Health Care CEO Michael Felder[4]; (3) Lieutenant A. Martinez; (4) Captain D. Goree[5]; and Does 1-20.  (Doc. No. 8 at 3-4).  The FAC collectively refers to Martinez, Anderson, and Goree as "Defendant CO's."  (*Id*. at 4 ¶ 12).

According to the FAC, on October 9, 2020 Defendant CO's and Doe Defendants[6] rushed to the scene of an unprovoked attack by four inmates on Plaintiff immediately spraying all of the inmates with OC spray while shouting orders for the inmates to desist and drop down to the floor.  (*Id*. at 5 ¶ 18).  Despite Plaintiff and the other inmates complying with orders, ceasing fighting and laying on the ground, Defendant CO's threw a flash grenade that landed near Plaintiff's face.  (*Id*. at 5-6 ¶¶ 19-20).  The flash grenade detonated and ignited the pepper spray on Plaintiff's beard and face mask.  (*Id*. ¶ 21).  While Plaintiff was struggling to remove his face mask, an unidentified Defendant CO[7] who was a few feet away sprayed OC spray directly into Plaintiff's

---

[2] The Court granted Defendants' Motion to Dismiss Kern Valley State Prison and California Department of Corrections from the First Amended Complaint.  (Doc. No. 28).

[3] The FAC correctly identifies Defendant "Christian Pfeiffer" as the Warden in the caption but in the body of the FAC incorrectly refers to this Defendant's forename as "Christina."  (Compare Doc. No. 8 at 1 with 3, ¶10).  The Court assumes this is a scrivener's error.

[4] Similarly, the FAC correctly identifies Defendant Michael Felder in the caption but in the body of the FAC incorrectly refers to this Defendant forename as "Michel."  (Compare Doc. No. 8 at 1 with 4, ¶12).  The Court assumes this is a scrivener's error.

[5] Plaintiff identifies this Defendant's surname as "Gorels" in the FAC.  In their Answer, Defendants note the correct spelling as "Goree."  (Doc. No. 17 at 3:1-2).  The Court will direct the Clerk to correct the spelling on the docket.

[6] Plaintiff sued Does 1-20, but to date no substitution has been made for any of the Doe Defendants.  (*See* Doc. No. 42-1 at 7).

[7] Plaintiff does not specify which of the three Defendant Cos performed this act.

2

face causing the flames to spread from Plaintiff's facial mask to his entire face and upper torso. (*Id*. ¶ 22). The same unidentified Defendant CO then stomped on Plaintiff's with his boot in "an extremely reckless and misguided attempt to put out the flames." (*Id*. ¶ 23). The Defendant CO's "began to beat Plaintiff's bottom half of his body with batons." (*Id*.). And despite the Defendant COs witnessing the beating, none intervened. (*Id*. ¶ 24).

As Plaintiff was led back to his cell, he felt the skin peeling off his face and requested medical attention, but Defendant COs refused to take him to the infirmary. (*Id*. ¶ 25). After Plaintiff continued to complain that he needed medical attention, later that day he was seen by medical staff, who described his burns as "skin irritation" akin to a "bad sunburn" and provided him only with Tylenol. (*Id*. at 7 ¶ 26). On October 11, 2020, Plaintiff sought further medical attention and was prescribed "weak pain medications" that were inadequate to treat his pain. (*Id*. ¶ 28). Plaintiff was seen by a nurse of October 12, 2020 who noted Plaintiff was "shaking" in pain and his blood pressure was elevated. (*Id*. at 7, ¶ 30). On October 14, 2020, Plaintiff again requested medical care and was seen by medical staff, who described his burns as "superficial" even though his facial hair had been burned off and his skin had become infected and discolored. Unspecified "Defendants" prescribed Plaintiff ibuprofen. (*Id*. at 7-8 ¶ 31). On October 27, 2020, Plaintiff was sent out for medical attention after the Prison Law Office contacted CDCR on Plaintiff's behalf. (*Id*. at 8 ¶¶ 32-36). Plaintiff has extensive scars on his face from the burns, experiences increased infections from minor cuts and or scrapes on his face, ingrown facial hair, and increased sensitivity to any contact on his face. Plaintiff has also been diagnosed with temporomandibular joint ("TMJ") and continues to experience pain, discomfort, and difficulty opening and closing his mouth from the Defendants CO's stomping on his face. (*Id*. at 8-9 ¶¶ 37-38). Plaintiff has also lost vision in his right eye, which may be permanent and has caused Plaintiff to experience severe headaches and migraines and difficulty sleeping. (*Id*. at 9 ¶ 38).

The FAC alleges claims of excessive use of force,[8] violation of the Bane Act, battery, against Defendants Pfeiffer, Martinez, Anderson, and Goree (First, Third, and Fourth Causes of

---

[8] The FAC cites to the Eighth and Fourteenth Amendment in support of Plaintiff's excessive use of force claim. As an incarcerated prisoner, Plaintiff's claims stem for the Eighth, not the Fourteenth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015).

Action); claims of cruel and unusual punishment, negligence, and violation of Government Code § 845.6 against Defendants Felder, Pfeiffer, Martinez, Anderson, and Goree  (Second, Fifth and Sixth Causes of Action).  Specifically, as to **Defendant KVSP Warden Christian Pfeiffer**, the FAC alleges that Pfieffer failed to enforce policy, train, supervise, discipline subordinates, provide medical care, intervene, and used excessive force; as to **Defendant Felder**, the FAC alleges that Felder failed to properly train, supervise, and provide adequate medical care, and failed to punish actors who deprived Plaintiff of immediate and adequate medical care; discipline subordinates, provide medical care, intervene, and used excessive force; as to **Defendants Martinez, Anderson, and Goree**, the FAC alleges these "Defendant Cos" used excessive force, failed to intervene, and failed to provide immediate medical care.  As relief, Plaintiff seeks damages, attorney's fees, and costs.  (*Id*. at 18).

## II.    DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

Defendants submit a Request for Judicial Notice In Support of their Motion for Summary Judgment.  (Doc. No. 42-3).  Defendants request the Court to take judicial notice of the following documents:

1.  Plaintiff's government claim form submitted to the Department of General Services (DGS) received April 14, 2021 (Exhibit A).

2.  Plaintiff's amended government claim form submitted to the DGS received May 27, 2021 (Exhibit B).

3.  The DGS' response rejecting Plaintiff's claim served September 28, 2021 (Exhibit C).

4.  The DGS certification that Exhibits A-C are true and correct copies of documents constituting the record of Plaintiff's claim number 21003597.

Plaintiff did not file any opposition to the request for judicial notice.

Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction," or they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts may "take judicial

4

notice of a record of a state agency not subject to reasonable dispute." *City of Sausalito v.*

*O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004); *see also Anderson v. Holder*, 673 F.3d 1089,

1094 n.1 (9th Cir. 2012) (holding courts "may take judicial notice of records and reports of

administrative bodies" (internal quotation marks omitted)).

Defendants request the Court take judicial notice of documents comprising the record of

Plaintiff's administrative claim before DGS for claim number 21003597.  These documents are

certified as true and correct copies by DGS.  Thus, the existence of these documents is not subject

to reasonable dispute.  Accordingly, the Court finds the existence and contents of these

documents appropriate for judicial notice and grants Defendants' request.  However, the Court

may not take judicial notice of the facts contained within those documents. *See Walker v.*

*Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).[9]

### III.    PARTIES' POSITIONS

#### A.  Defendants' Exhaustion-Based Motion for Summary Judgment

Defendants filed the instant exhaustion based MSJ on August 14, 2023.  (Doc. No. 42).  In

support, Defendants submit a Memorandum of Points and Authorities (Doc. No. 42-1); a

Statement of Undisputed Material Facts (Doc. No. 42-2); a Request for Judicial Notice (Doc. No.

42-3); and the Declarations of C. Garcia (Doc. No. 42-4), B. Hancock (Doc. No. 42-5), C.

Henderson (Doc. No. 42-6), and Howard Moseley (Doc. No. 42-7), each containing attached

exhibits.  Defendants contend the uncontroverted evidence proves Plaintiff did not properly and

fully exhaust his available administrative grievances regarding his claims against Defendants

---

[9] The Court notes the apparent discrepancy between the Defendants named in Plaintiff's FAC as having used excessive force against Plaintiff and having denied him medical care (Defendants Martinez, Anderson, and Goree), and those cited in Plaintiff's Amended Government Claim as having done so.  The latter document states, "On information and belief, the following correctional officers were present, witnessed, and/or were directly involved in the assault and excessive use of force against Maea on or about October 9, 2020: S. Silva, G. Villagomez, R. Garcia, E. Prieto, and Valero."  (Doc. No. 42-3 at 20).  The Amended Government Claims Form lists Defendants Martinez, Anderson, and Goree as "Employees Against Whom the Claim is Filed" but does not list them among those who were "present, witnessed, and/or were directly involved" in the incident.  At this stage of the proceedings, the Court must accept as true Plaintiff's factual assertions in the FAC.  It thus, addresses whether Plaintiff exhausted his administrative remedies as the claims as articulated against the named Defendants.  Thus, the apparent discrepancy is not relevant to the issues currently before the Court.

Felder, Pfeiffer, Anderson, Martinez, and Goree before filing this suit.  (*See generally* Doc. No. 42-1).

Defendants attach the two custody grievances and two health care grievances Plaintiff submitted to correctional officials regarding the October 9, 2020 incident and the staff response to the grievances.  As to Custody Grievance Log No. 71069, Defendants assert that it was not properly exhausted because (1) Plaintiff submitted it directly to the Office of Appeals, rather than the Office of Grievances, (2) the grievance does not name or describe the actions of the named Defendants, and (3) Plaintiff failed to appeal the Office of Appeal's February 2021 reassignment of the grievance to Kern Valley State Prison.  (*Id*. at 20-23.)  As to Custody Grievance Log No. 57803, Defendants assert it was not properly exhausted because (1) it was not timely submitted, (2) the grievance does not name or describe the actions of the named Defendants, and (3) Plaintiff failed to appeal the rejection of the custody claim within his grievance as untimely.  (*Id*.).  As to Health Care Grievance Log Nos. 20000877 and 20000920, Defendants assert they were not properly exhausted because the grievances do not name nor describe the actions of any named Defendant.  (*Id*. at 24-25).

**B.  Plaintiff's Opposition to Defendants' Exhaustion-Based MSJ**

After being granted multiple extensions of time, Plaintiff filed an Opposition to the MSJ on January 23, 2024.  (Doc. No. 56).  In support, Plaintiff submits (1) a Statement of Undisputed Material Facts, (Doc. No. 56-1), (2) a Statement of Disputed Material Facts, (Doc. No. 56-2), (3) the Declaration of Colleen Mullen with various exhibits (Doc. No. 56-3), (4) Plaintiff's Declaration (Doc. No. 56-18), and (5) Plaintiff's Objections to Evidence Filed in Support of Defendants' Motion (Doc. No. 56-19).

Plaintiff asserts that Defendants' Motion should be denied because there are genuine disputes of material fact as to (1) whether the prison grievance system was available to Plaintiff while he was being held in the administrative segregation unit, (2) whether Plaintiff exhausted those administrative remedies that were available to him, (3) and whether Plaintiff's grievances, despite not naming the Defendants, sufficiently put prison officials on notice to satisfy the requirements of the Prison Litigation Reform Act.  (*See generally* Doc. No. 56-1).

6

1      **C.  Defendants' Reply in Support of their Exhaustion-Based MSJ**

2          In their Reply, Defendants largely reiterate the arguments set forth in their moving brief as

3   to why none of Plaintiff's four grievances exhausted his administrative remedies.  (*See generally*

4   Doc. No. 57).  Additionally, Defendants contend that Plaintiff's claims regarding the

5   unavailability of the grievance process should have been raised in a separate grievance.  (*Id*. at 2).

6   Further, they argue that the facts do not reflect those obstacles prevented Plaintiff from filing his

7   grievances, but rather that he simply filed them incorrectly.  (*Id*.).

8                          **IV.      DISCUSSION**

9          **A.  Summary Judgment Standard**

10         Summary judgment is appropriate when there is "no genuine dispute as to any material

11   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is

12   material where it is (1) relevant to an element of a claim or a defense under the substantive law

13   and (2) would affect the outcome of the suit.  *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242,

14   247 (1987).

15         The party moving for summary judgment bears the initial burden of proving the absence

16   of a genuine dispute of material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  When

17   the moving party has met this burden, the nonmoving party must go beyond the pleadings and set

18   forth specific facts by affidavits, deposition testimony, documents, or discovery responses,

19   showing there is a genuine issue that must be resolved by trial.  *See* Fed. R. Civ. P. 56(c)(1);

20   *Pacific Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir.

21   2021).  A mere "scintilla of evidence" in support of the nonmoving party's position is

22   insufficient.  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Rather, the

23   evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party,

24   to return a verdict in that party's favor.  *Id.*

25         In an exhaustion-based summary judgment motion, the defendant bears the initial burden

26   of establishing "that there was an available administrative remedy, and that the prisoner did not

27   exhaust that available remedy."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  If the

28   defendant carries that burden, "the burden shifts to the prisoner to come forward with evidence

                                         7

1    showing that there is something in his particular case that made the existing and generally

2    available administrative remedies effectively unavailable to him." *Id.*  The ultimate burden of

3    persuasion remains, however, with defendant.  *Id.*

4         The Court has carefully reviewed and considered all arguments, points and authorities,

5    declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and

6    other papers filed by the parties.  The omission to an argument, document, paper, or objection is

7    not to be construed that the Court did not consider the argument, document, paper, or objection.

8    Instead, the Court thoroughly reviewed and considered the evidence it deemed admissible,

9    material, and appropriate for purposes of this Order.

10        **B.  Exhaustion Under the PLRA**

11        Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42

12   U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

13   correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C.

14   § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life," including

15   *Bivens* claims.  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).  Exhaustion is a condition

16   precedent to filing a civil rights claim.  *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

17        The PLRA recognizes no exception to the exhaustion requirement, and the court may not

18   recognize a new exception, even in "special circumstances."  *Ross v. Blake*, 578 U.S. 632, 648

19   (2016).  The one significant qualifier is that "the remedies must indeed be 'available' to the

20   prisoner."  *Id.* at 639.  A prison's internal grievance process controls whether the grievance

21   satisfies the PLRA exhaustion requirement.  *Jones v. Bock*, 549 U.S. 199, 218 (2007).

22        An inmate must exhaust available remedies but is not required to exhaust unavailable

23   remedies.  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*).  "To be available, a

24   remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id.*

25   (quoting *Brown v. Valoff*, 422 F.3d 926, 936–37 (9th Cir. 2005)).  "Accordingly, an inmate is

26   required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain

27   'some relief for the action complained of.'"  *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (quoting

28   *Booth v. Churner*, 532 U.S. 731, 738 (2001)).

Failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove." *Jones*, 549 U.S. at 204.  It is the defendant's burden to prove that there was an available administrative remedy, and that the prisoner failed to exhaust that remedy. *Albino*, 747 F.3d at 1172.  "Once the defendant has carried that burden, the prisoner has the burden of production.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*.  If the court concludes that the prisoner failed to exhaust available administrative remedies, the proper remedy is dismissal without prejudice. *See Jones*, 549 U.S. at 223–24; *Lira v. Herrera*, 427 F.3d 1164, 1175–76 (9th Cir. 2005).

**C.  CDCR Custody Grievance Process**

For grievances received by prison officials on or after June 1, 2020, the California prison grievance system has two levels of review.  Cal. Code Regs. tit. 15, §§ 3480-3487.  Section 3481(a) provides that an inmate can "submit a written grievance containing one or more claims . . . to dispute a policy, decision, action, condition, or omission by the Department or departmental staff that causes some measurable harm to their health, safety, or welfare." *Id*., § 3481(a).  Section 3482(c) directs that an inmate must follow this procedure to submit a grievance:

> (1) type or print legibly on an official form CDCR 602-1 (03/20) or complete the form electronically, if available;
>
> (2) describe all information known and available to the claimant regarding the claim, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge;
>
> (3) describe any attempt to resolve the claim informally and, if there was such an attempt, provide the details of that attempt, including key dates and times, names and titles of all involved staff members (or a description of those staff members), and the results of that attempt, to the best of the claimant's knowledge;
>
> (4) include all supporting documents available to the claimant related to the claim or identify to the best of the claimant's ability all relevant records with sufficient specificity for those records to be located; and
>
> (5) sign and date the form CDCR 602-1 (03/20).

1 Cal. Code Regs. tit. 15, § 3482(c). An inmate must submit the grievance within 30 days of the

2 incident he is challenging.  *Id*., § 3482(b).

3       Once an inmate has submitted a CDCR 602-1, the Institutional or Regional Office of

4 Grievances ("OOG") must provide a written decision that clearly explains the reasoning for its

5 decision as to each claim contained in the grievance.  Cal. Code Regs. tit. 15, § 3481(a).  Within

6 30 days of the OOG decision, the inmate may appeal to the Office of Appeals ("OOA"), which

7 must also provide a written decision to the inmate that clearly explains the reasoning for its

8 decision as to each of the inmate's claims.  *Id*., §§ 3481(a), 3485(b).  The regulations provide that

9 the grievance is exhausted once the OOA completes its review.  *Id*., § 3486(m).

10       The regulations set forth two principal time constraints on officials reviewing an inmate's

11 grievance.  First, an official who receives a grievance, either at the OOG or the OOA level of

12 review, must provide the inmate with a notice of receipt within 14 days of filing.  *Id*., §§ 3483(f),

13 3486(f).  The notice must include the date the grievance was received and the deadline for

14 authorities to respond to the grievance.  *Id*.  The response deadline is provided in §§ 3483(i) for

15 the OOG and 3486(i) for the OOA -- both entities have 60 days from the date of receipt to issue

16 their written responses to the grievance unless a shorter time is mandated by other law.

17       **D.  CDCR Health Care Grievance Procedures**

18       During the applicable time, CDCR's health grievance process involved a two-step

19 procedure for addressing an inmate's health care concerns.  *See* Cal. Code Regs. tit. 15,

20 § 3999.225, *et seq*.  First, "[t]he grievant shall complete Section A of the CDCR 602 HC and

21 submit to the HCGO [Health Care Grievance Office] where the grievant is housed within 30

22 calendar days of: (1) The action or decision being grieved, or; (2) Initial knowledge of the action

23 or decision being grieved."  Cal. Code Regs. tit. 15, § 3999.227(b); *see also id*., § 3999.225(n)

24 (defining HCGO). "The grievant shall document clearly and coherently all information known

25 and available to him or her regarding the issue … includ[ing] any involved staff member's last

26 name, first initial, title or position, and the date(s) and description of their involvement.  If the

27 grievant does not have information to identify involved staff member(s), the grievant shall

28 provide any other available information that may assist in processing the health care grievance."

1  *Id*., § 3999.227(g); *see also, e.g., Robinson v. Cryer*, 2023 WL 3007344, at *6–7 (E.D. Cal. Apr.

2  19, 2023), report and recommendation adopted, 2023 WL 3625266 (E.D. Cal. May 24, 2023)

3  (finding medical grievance that did not identify certain defendants did not exhaust plaintiff's

4  administrative remedies with respect to those defendants).

5          Second, "[i]f dissatisfied with the institutional level health care grievance disposition, the

6  grievant may appeal the disposition … to HCCAB [Health Care Correspondence and Appeals

7  Branch] . . . within 30 calendar days plus five calendar days for mailing . . . ."  Cal. Code Regs.

8  tit. 15, § 3999.229(a); *see also id*., § 3999.225(l) (defining HCCAB).  "The headquarters' level

9  review constitutes the final disposition on a health care grievance and exhausts administrative

10  remedies . . . ."  *Id*., § 3999.230(h), *see also id*. § 3999.226(g) ("Health care grievances are

11  subject to a headquarters' level disposition before administrative remedies are deemed exhausted

12  pursuant to section 3999.230.  *A health care grievance or health care grievance appeal rejection*

13  *or withdrawal does not exhaust administrative remedies*.") (emphasis added).

14         **E.  Exhaustion of State Law Claims**

15          The PLRA does not apply to state law claims.  *See* 42 U.S.C. § 1997e(a) (requiring

16  exhaustion of administrative remedies for actions pursuant to § 1983 or other federal laws); *see*

17  *also Franklin v. McDonnell*, 2018 WL 6991084, at *7 (C.D. Cal. Nov. 20, 2018) (PLRA does not

18  apply to state law negligence claim).  However, under California state law "a prisoner must

19  exhaust available administrative remedies before seeking judicial relief."  *Wright v. State of Cal*.,

20  122 Cal.App.4th 659, 664-65 (2004).  Additionally, California's exhaustion requirement is

21  jurisdictional.  *Id*. at 655; *Upshaw v. Superior Court*, 22 Cal. App. 5th 489, 505-06 (2018).

22  Compliance with the California Tort Claims Act does not excuse an inmate's failure to exhaust

23  his administrative remedies by filing a grievance.  *See Wright*, 122 Cal. App. 4th at 663-64, 670-

24  71 (dismissing state-law claims for failure to exhaust administrative remedies even though inmate

25  filed timely government claim); *Parthemore v. Col*, 221 Cal. App. 4th 1372, 1376 (2013) (stating

26  "obligation to exhaust the administrative remedies available to prisoners concerning the medical

27  treatment they receive is independent of the obligation to comply with the Government Claims

28  Act"); *see also Velazquez v. County of Orange*, 2013 WL 12128798, at *2, *7 (C.D. Cal. Dec. 2,

1  2013) (dismissing state-law claims for failure to exhaust administrative remedies without

2  addressing dispute over whether plaintiff complied with California Tort Claims Act).

3  **ANALYSIS**

4  **A.  Material Facts Regarding Exhaustion of Administrative Remedies**

5  Following a thorough review of the evidence submitted, the Court finds the following

6  material facts are deemed undisputed, unless otherwise indicated.  At the outset, the Court notes

7  that Plaintiff's briefing asserts various facts concerning the general difficulty he faced in

8  obtaining grievance forms while in administrative segregation.  (*See* Doc. No. 56-2 at 4-7, ¶¶ 22-

9  41).  Because Plaintiff does not specifically link these difficulties to any of the deficiencies at

10  issue in his grievances, the Court does not find these facts to be material.

11  •  Plaintiff Ernest Maea was, at all times relevant, an inmate in the custody of the

12  California Department of Corrections and Rehabilitation ("CDCR").  (Doc. No. 8 at 3

13  ¶ 7).

14  •  Plaintiff was incarcerated at Kern Valley State Prison ("KVSP") from October 1, 2015

15  to March 15, 2021.  (Doc. No. 42-4 at 2 ¶ 5).

16  •  On October 9, 2020, Plaintiff was involved in a use of force incident in which he

17  alleges he was injured by KVSP correctional officers who used excessive force against

18  him and then refused him medical treatment. (Doc. No. 8 at 10-18).

19  •  On October 14, 2020, Plaintiff filed a grievance to the Health Care Grievance Office,

20  assigned Log Number HC 20000877, which was received on October 22, 2020.  (Doc.

21  No. 42-6 at 11).  In it, Plaintiff states:

22  I have 2nd degree burns from an open flame to my face and I am in
   constant pain.  It is almost impossible to sleep.  My face throbs like
23  it has its own heart beat.  I was denied pain medication and help by
   an Asian doctor that could not speak English or distinguish a burn
24  from a flame with a chemical burn.  My blood pressure was high
   due to pain and lack of sleep.  Please help."  (*Id.*).

25  Under the "Supporting Documents" section, Plaintiff writes,
26  "Appointment recommendations by doctor on computer. I don't
   know his name. Doctor C. Relevante."  (*Id.*).

27  Plaintiff included an attachment which states, "I respectfully
28  request 2 Tylonol [sic] 3 with codeine 4 times a day, please. I am an

12

adult male 6'ft 1"in and 240 lbs. I was being given one tylonol [sic]
3 with codeine 3 times a day but it was stopped. It helped but only
lasted 2 hours. I just need the pills until I am done healing, please. I
am unable to sleep otherwise and the pain level fluxuates [sic].
Please help. Thank you.  (*Id*. at 13).

- On December 18, 2020, the HCGO issued a decision of no intervention, documenting the medical attention Plaintiff received for his injuries.  (Doc. No. 42-6 at 12-14).  On December 21, 2020, Plaintiff filed an appeal of Log No. 20000877, which was received by the Health Care Correspondence and Appeals Branch on December 28, 2020.  (*Id*. at 19, 20).  In it, Plaintiff states:

I am very dissatisfied. I have just now received this response and
the date is 12-21-20. The incident in which I recieved [sic] 2nd and
3rd degree burns to my face and upper torso from an open flame not
chemical burns was 10-9-20.   It's been 2 months.   I suffered
painfully for 2 weeks before I was seen by a real doctor in a real
hospital. Your staff took a hypocritic oath to help and to health to
never do harm. I sat here in an ad-seg cell in pain with no gauze or
any pain meds and had to rip pieces of towels and sheets in order to
properly dress my own injuries and hope I didn't get any infections.
I didn't start the sabaxone [sic] treatment until almost a month after
my injuries and that had nothing to do with helping me. I am your
ward. I hope your children never go through what I had to endure.
Dicks.

- On March 19, 2021, the Headquarters Level issued a decision of no intervention, and closed the grievance on March 23, 2021.  (*Id*. at 16-18).

- On October 27, 2020, Plaintiff submitted a second health care grievance, this time to the Health Care Correspondence and Appeals Board, assigned Log No. 20000920, which was received on November 5, 2020.  (Doc. No. 42-6 at 18).  In it, Plaintiff states:

On October 9, 2020, I was in an altercation that ended with staff
using force to quell.  A pepper powder grenade exploded near my
face in the crook of my neck and ignited my face mask and beard.
There was an open flame.  Another officer sprayed his personal can
of O/C pepper spray which upon contact with the open flame from
my mask and beard then also caught on fire and engulfed my face
and upper torso in an open flame resulting in 2nd and 3rd degree
burns to my face and all the hair of my chest, arms and face was
singded [sic] off.  My injuries consisted of the skin of my lips, nose,
cheeks, chin and ears burning completely off.  The first visit to a
doctor I had was with a Doctor C. Relevante.  Upon explaining the
circumstances to my injuries, he concluded that my injuries were
superficial chemical burns that did not outside medical or any pain

13

> relief.  I again tried to explain that I have been sprayed before over the last 15 years and never a reaction and that this was an open flame.  Due to Dr. C. Relevante's ignorance and misdiagnoses I was not properly seen by medical until 10/21/20 and was not able to sleep due to the pain level I was experiencing.  The nurse checked my vitals 3 times in the visit with Dr. C. Relevante and all 3 times my blood pressure was high.  I was in pain for over 2 weeks until the 3rd day after starting the silver sulfadiazine treatment and given the Tylonol [sic] 3 with codeine by Dr. Chan.  I would like this documented so I can exhaust all formal remedies.  Thank you.  (Doc. No. 42-6 at 18-19).

- On February 5, 2021, HCCAB issued a rejection notice for HC 20000920, advising Plaintiff that his grievance was improperly submitted to the *appeals level* and that he is required to resubmit the grievance to "your institution's Health Care Grievance Office . . . within 30 calendar days."  (Doc. No. 42-6 at 20 (emphasis added)).

- On February 25, 2021, the Health Care Grievance Office at KVSP received HC 20000920 and on February 26, 2021, the HCGO issued a rejection notice to Plaintiff of the grievance because it was duplicative of HC 20000877 which was already pending review.  (*Id*. at 17).

- On November 3, 2020, Plaintiff submitted a custody grievance to the CDCR Office of Appeals, which was received on November 6, 2020.[10]  (Doc. No. 42-4 at 7-11).  The top of the grievance is marked "Log # 57803."  (*Id*. at 7).  In it, Plaintiff states:

> October 9, 2020, on Facility A during yard release I was a victim to an assault by 2 inmates that resulted in staff using force to stop the incident.  The use of force resulted in my receiving 2nd and 3rd degree burns to my face and neck and upper torso.  While I was in a prone position on the ground a pepper powder grenade was lobbed by staff toward my face and landed in the crook of my neck and shoulder on my left.  The grenade then detonated and caught my face mask and beard on fire with an open flame.  From my right side a staff member sprayed his O/C cannister, which upon contact

---

[10] Defendants identify this grievance as Log # 71069 in the Declaration of C. Garcia, however at the top of the grievance is written "Log # 57803."  (*See* Doc. No. 42-4 at 7).  The grievance is signed "10/29/20" and the date the Office of Appeals received the grievance is stamped "November 6, 2020."  (*Id*.).  The envelope accompanying the grievance indicates it was mailed on November 3, 2020.  (*Id*. at 11).  Thus, Exhibit A appears to contradict Defendants' position that grievance Log # 57803 was not received until November 13, 2020.  Meanwhile, Garcia's Declaration describes Exhibit B as "[a] true and correct copy of Grievance Log No. 57803," however the grievance does not bear any Log Number.  Plaintiff signed the grievance on November 6, 2020 and it is marked received by the Kern Valley State Prison Inmate Appeals Office on November 13, 2020.  There is no envelope accompanying the grievance that would indicate when it was mailed.

14

with the open flame ignited and engulfed my face and torso in fire. Staff then proceed to put out the fire with their boots by kicking my face and torso.  The totality of my injuries include 2nd and 3rd degree burns to my face and damage to my right eye which I cannot see clearly out of.  Also bruises and scrapes to my elbows, knees, and chest.  I voiced my pain and need for medical attention to staff where I was told that I did not need medical attention and that my injuries were superficial and like a bad sun tan.  I put in 2 medical requests and was finally seen by a doctor C. Relevante on October 14, five days after the incident. I asked for help and was told that my wounds were from a chemical burn and did not need outside medical nor pain relief and I will be fine with Ibuprofin [sic] and plenty of water.  I tried to explain it wasn't a chemical burn and that the pain I was in was preventing me from sleep.  He ignored my request for help.  I was finally sent to the outside hospital on October 21, 2020 and given pain relief almost 2 weeks of suffering. I am exhausting all remedies for a higher review.  (*Id.* at 7-9).

- Plaintiff submitted a second custody grievance, signed November 6, 2020, which bears a stamp from the Kern Valley State Prison Inmate Appeals Office dated November 13, 2020.  (Doc. No. 42-4 at 14-15).  In it, Plaintiff states:

I respectfully request an investigation into improper use of force by CDCR staff resulting in serious bodily injury.  On October 9, 2020 at approximately 13:30 hours while being release [sic] to afternoon yard, I was attacked by two inmates which required me to defend myself.  This also required staff to use force in the form of pepper powdered grenades, personal O/C cannisters and batons to gain control of incident . . . while in a prone position on the ground, a pepper powdered grenade was launched toward my face and lodged in the crook of my neck and face on the left side.  Upon detonating, the grenade caught my face mask and beard on fire with an open flame.  While on fire an officer to my right opened fire with his O/C/ handheld pepper spray cannister.  The jet spray of his O/C can made contact with the open flame of my face mask and beard caused by the grenade and ignited in a flame like a blowtorch.  Staff saw that I was on fire and tried to put out the flame with their boots stomping and kicking my face and neck.  While I tried to put out the fire of my beard another staff member produced his baton and started beating on my back until another officer told him I was on fire.  The injuries I received were: swollen face and neck and lips, the skin from my nose, lips, cheeks, neck and ears blistered and were scraped off from the kicking and decontamination.  All the burns were 2nd and 3rd degree in nature.  I was misdiagnosed by institution medical staff that resulted in nearly 2 weeks of constant pain that kept me from sleeping and eating and healing properly.  I was not given any medical supplies in which to care for my many open wounds and had to resort to ripping pieces of towels and sheets to clean and care for my injuries.  I was also not properly given pain management.  I have filed a form before this but told to file another due to the last being outdated.  I respectfully wish an investigation to be completed in this matter.  Please. Thank you.  I also respectfully request the incident report to this assault with the

names of all staff involved, please.

- On November 18, 2020, CDCR issued an "OOG Acknowledgment of Receipt and Closure of Grievance" regarding Custody Grievance Log No. 57803.[11]  (Doc. No. 42-4 at 18).  It contains separate responses to the medical and custody-related claims contained in Plaintiff's grievance.  As to his medical claim, the letter indicates that OOG "redirected this claim to the institution's Health Care Grievance Coordinator for review and processing in accordance with governing regulations."  (*Id.*).  As to his custody claim, the letter states that Plaintiff's "claim concerning Offender Safety and Security; Use of Force is being rejected by the Office of Grievances . . . [because] you did not submit the claim within the timeframe required by California Code of Regulations, Title 15 . . . You should have submitted your claim on or by 11/08/2020 to meet the 30 calendar day requirement set forth in the regulations.  This serves as your response from the Office of Grievances.  If you are dissatisfied with this response, you may appeal the rejection decision to CDCR's Office of Appeals."  (*Id.*).

- Plaintiff did not appeal the rejection of Custody Grievance Log No. 57803.  (Doc. No. 42-4 at 5 ¶ 8; Doc. No. 42-7 at 4 ¶ 10).

- On February 26, 2021, Plaintiff was issued a "Claimant Grievance Claims Decision Response."  It states:

> Our office reassigned your claim concerning Offender Safety and Security; Use of Force to the Office of Grievances at Kern Valley State Prison.  The Office of Grievances at Kern Valley State Prison will provide a response to your claim on or before 01/06/2021.  Once you receive a response from Kern Valley State Prison and if you are dissatisfied with the decision, you may file an appeal with the California Department of Corrections and Rehabilitation Office of Appeals.

> **Decision: Reassigned.**  (Doc. No. 42-4 at 20).

- Plaintiff did not receive any further response from the OOG at KVSP concerning Custody Grievance Log No. 71069.  (Doc. No. 56-6 at 61-62); (Doc. No. 56-17);

---

[11] It is unclear whether OOG's reference to Log # 57803 here is an error.  As noted above, the grievance marked Log # 57803 was received by OOA on November 6, 2020, and was apparently never transmitted to OOG.

16

(Doc. No. 56-16); (Doc. No. 56-5 at 87-87).

- Plaintiff filed his initial complaint in this matter on March 28, 2022.  (Doc. No. 1).

- Plaintiff's first amended complaint ("FAC") alleges claims for excessive force, and cruel and unusual punishment in violation of the Eighth Amendment and state law claims for violations of the Bane Act and Government Code § 845.6, battery, and negligence.  (*See* Doc. No. 8).

- Plaintiff's FAC identifies the following Defendants: KVSP Warden Christian Pfeiffer; KVSP Health Care Chief Executive Officer Michael Felder; KVSP Correctional Lieutenant Martinez; KVSP Correctional Sergeant Anderson; and KVSP Correctional Captain Goree.  (Doc. No. 8 at 3-4).

- Plaintiff's complaint alleges the following as to each Defendant arising out of a use of force incident on October 9, 2020: (1) Defendant Pfeiffer failed to enforce policy, train, supervise, discipline subordinates, provide medical care, intervene, and used excessive force; (2) Defendant Felder failed to properly train, supervise, and punish the actors who deprived Plaintiff of immediate and adequate medical attention; and failed to provide adequate medical care after the October 9, 2020, incident; and (3) Defendants Martinez, Anderson, and Goree used excessive force, failed to intervene, and failed to provide immediate medical care.  (Doc. No. 8 at 10-18).

**B.  HC 20000877 and HC 20000920 Did Not Exhaust Plaintiff's Administrative Remedies as to any Defendant**

It is uncontested that Plaintiff's first health care grievance, HC 20000877, does not name any of the Defendants in this action.  In this grievance, Plaintiff notes that he has "2nd degree burns from an open flame to my face" but does not describe the actions or inaction of any correctional staff involved in the October 9, 2020 use of force incident.  Plaintiff does not argue that HC 20000877 sufficiently put CDCR on notice regarding a custody-related claim.  Thus, there is no plausible argument that Plaintiff put Defendants Martinez, Anderson, or Goree on notice regarding potential claims against them by filing Health Care grievance 20000877, and therefore the grievance fails to exhaust administrative remedies against them.

17

Nevertheless, Plaintiff sets forth three arguments why his health care grievances "put the prison on notice that Maea complained about inadequate medical care" and thus exhausted his administrative remedies as to one or more unspecified Defendants.[12]  For reasons discussed below, the Court does not find any of those arguments to be persuasive.

First, Plaintiff argues that he "provided the level of detail required by the prison's regulations."  (Doc. No. 56 at 24-25).  Even though he did not name any of the individuals identified in his federal Complaint in his healthcare grievance, Plaintiff argues, "[t]he Code of Regulations solely requires that an inmate provide information to the best of his knowledge."  (*Id*. at 25) (citing Cal. Code Regs. Tit. 15 3482(c)(2).  While this is true, the Ninth Circuit has found that a grievance exhausts administrative remedies as to an unnamed individual only where the grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit."  *Reyes v. Smith,* 810 F.3d 654, 659 (9th Cir. 2016).  That is not the case with HC 20000877, which complains only of lack of pain medication and proper medical care.  (*See* Doc. No. 42-6 at 13).  Because the grievance neither names nor describes the actions attributed to the named Defendants, Plaintiff's grievance fails to exhaust administrative remedies as to any of them.

Second, Plaintiff argues that his grievance "put the Defendants on notice that the officially sanctioned conduct implicates supervisory liability."  (Doc. No. 56 at 25).  He contends that his "complaint regarding his medical care sufficiently put the Defendant on notice of the conduct . . . believed to be violative of his rights, thereby making potential supervisory liability if the conduct was deemed to be within policy obvious."  (*Id*.).  Under Plaintiff's argument, any claim against a state employee would necessarily exhaust administrative remedies as to the employee's supervisor(s), whether or not they were aware of the conduct.  This is contrary to applicable law and the controlling case on the issue.

In *Fordley v. Lizarraga*, a California inmate submitted an administrative grievance alleging an assault by four correctional officers.  18 F.4th 344, 347 (9th Cir. 2021).  The inmate later filed suit against not only the officers, but also the prison warden for deliberate indifference

---

[12] The only plausible Defendant to be implicated by a claim for inadequate medical care are Defendants Felder, the Health Care CEO, and perhaps Pfeiffer, the KVSP Warden.

to the officers' violation of his constitutional rights.  *Id*. at 349.  The Ninth Circuit dismissed the claim against the warden, holding that the inmate was required to exhaust his claim as to the warden, but failed to do so.  Although the claims all arose from the same incident, the Court noted that the grievances "did not name [the] warden" or "describe the warden['s]" involvement.  *Id*.  The mere fact that the inmate's claims against the warden related to the officers' conduct was not enough to "put the prison on notice that [the plaintiff] intended to assert a deliberate indifference claim against the warden."  *Id*.  Thus, the inmate's failure to comply with prison grievance regulations rendered the claim against the warden unexhausted.  *Id*.  Similarly, in *Sunkett v. Ruiz*, the court granted an exhaustion-based motion for summary judgment in favor of the Chief Executive Officer of Health Care Services at Calipatria State Prison, where plaintiff addressed "medical staff as a whole" in his health care grievances but did not name the health care CEO in either his grievance or his appeal.  2016 WL 8942966 (S.D. Cal. Feb. 12, 2016), *report and recommendation adopted*, 2016 WL 8941158 (S.D. Cal. Mar. 14, 2016).

Likewise, here, Plaintiff's claims against Warden Pfeiffer and Health Care CEO Felder are unexhausted because they were neither mentioned in HC 20000877 nor are their actions described in the grievance.  Plaintiff cites a Southern District of Texas case holding that an inmate exhausts his administrative remedies as to his *Monell* claim against a municipal entity "simply by exhausting his remedies on his claims regarding the officially sanctioned conduct."  (Doc. No. 56 at 23) (citing *Springer v. Unknown Rekoff*, 2016 WL 5372526, at *5 (S.D. Tex. Sept. 26, 2016).  Plaintiff contends that the Court should be similarly lenient in evaluating exhaustion under a supervisory liability theory.  (*Id*.).  However, such an approach would be directly contrary to the Ninth Circuit's holding in *Fordley* and is not explicitly justified even under the out-of-circuit authority cited by Plaintiff, which applies only to *Monell* claims.  Accordingly, the Court declines to adopt such an approach and, thus, Plaintiff's second argument likewise fails.

Third, Plaintiff argues that the Health Care Grievance Form was insufficient because it does not specifically request the names of the involved Defendants.  (Doc. No. 56 at 26).  The Court agrees that the 602 HC form does not specifically ask the inmate to provide the names of involved staff, unlike the CDCR 602 form used for custody grievances.  However, as discussed

19

above, Plaintiff's failure to name any of the Defendants in his grievance is not itself fatal.  Rather, here, because Plaintiff neither named any Defendant *nor described their actions*, he failed to put them or the institution on notice that they may be sued.  *See Reyes*, 810 F.3d at 659.  Plaintiff's failure to do either cannot fairly be attributed to the form 602 HC's alleged shortcomings.  *See Blacher v. Diaz*, 2022 WL 2906488, at *6 (S.D. Cal. July 22, 2022) (rejecting plaintiff's argument that lack of space in grievance form prevented him from naming defendants).  Thus, Plaintiff's third argument that he exhausted his administrative remedies as to his health care grievances fails.

As to HC 20000920, the grievance does describe in some detail the use of force incident giving rise to his injuries but appears to focus on the inadequate medical care that was provided to him in the wake of the October 9, 2020 incident.  Plaintiff does not argue in his Opposition that HC 20000920 should not have been processed as a health care grievance.  Even if the Court construes the grievance as sufficiently describing the actions of Defendants Martinez, Goree, and Anderson to provide fair notice of claims against them, it is uncontested that Plaintiff did not appeal the February 26, 2021 rejection of his claim as duplicative by the HCGO.  (Doc. No. 42-6 at 1).  And CDCR regulations make clear that "[a] health care grievance or health care grievance appeal rejection or withdrawal does not exhaust administrative remedies."  Cal. Code Regs. tit. 15 § 3999.226(g); *see also Warren v. Ndu*, 2024 WL 583809, at *7 (E.D. Cal. Feb. 13, 2024) (finding that plaintiff did not exhaust administrative remedies after receiving appeal rejection notice from HCCAB), report and recommendation adopted, 2024 WL 1199550 (E.D. Cal. Mar. 20, 2024).  Thus, Plaintiff failed to exhaust his administrative remedies as to HC 20000922.

**C.  There is a Genuine Dispute Whether Plaintiff's Custody Grievances Exhausted His Administrative Remedies as to Defendants Martinez, Anderson, and Goree**

The record is more complicated for Plaintiff's two custody grievances, Log Nos. 71069 and 57803.  While Plaintiff did not follow the grievance procedures set forth in CDCR regulations at every step, it is also apparent that CDCR did not properly process one or both of Plaintiff's grievances according to their own policies, resulting in the grievance process becoming effectively unavailable to Plaintiff.  Nonetheless, as discussed further below, neither of the

1  custody grievances names or describes any actions that can be construed as actions taken by

2  Defendants Felder and Pfeiffer, and therefore Plaintiff's custody grievances fail to exhaust his

3  administrative remedies as to them.  However, both grievances contain facts that provide fair

4  notice to the correctional staff who were on duty in Facility A for the October 9, 2020 use of

5  force incident that their actions could be the subject of a legal claim.  Therefore, as discussed

6  further below, the Court finds it inappropriate to grant summary judgment as to Defendants

7  Martinez, Goree, and Anderson, but will recommend the district court grant summary judgment

8  as to Defendants Felder and Pfeiffer.

9                       1.  <u>Log No. 71069</u>

10        As an initial matter, Defendants' filings reflect some confusion as to which of Plaintiff's

11  grievances was identified by CDCR as Log No. 71069.  For the sake of clarity, in this Order the

12  Court accepts Defendants' position that this grievance was the one submitted on November 3,

13  2020 and received on November 6, 2020 (and identified as Exhibit A to the Declaration of

14  Carmen Garcia), even though it is marked as "Log # 57803."  Similar to their arguments above,

15  as to Plaintiff's health care grievances, Defendants articulate three reasons why Custody

16  Grievance Log No. 71069 failed to exhaust Plaintiff's administrative remedies as to any

17  Defendants.

18        First, Defendants argue the grievance fails to name or describe the actions of any

19  Defendants.  As noted above, the Court agrees that with respect to Defendants Felder and Pfeiffer

20  the substance of this custody grievance cannot be construed as alleging any improper action taken

21  or not taken by these two Defendants.  It is uncontested that neither Defendant is mentioned by

22  name in Plaintiff's grievance.  As to Plaintiff's medical care, the grievance states only that

23  Plaintiff "voiced [his] pains and need for medical attention to staff" who minimized his injuries.

24  There is no mention of any action or omission that could be attributed to Defendant Felder.  The

25  only medical staff mentioned by name is Doctor C. Relevante, who is not a party to this action.

26  Because it neither names him nor describes his actions—but only refers to the actions of "staff"

27  and Dr. Relevante—the grievance fails to exhaust administrative remedies as to Defendant

28  Felder.  *See Reyes*, 810 F.3d at 659; *see also Sunkett*, 2016 WL 8942966 at *12.

Nor do the use of force allegations name or make reference to any action or omission by Defendant Pfeiffer, KVSP's warden.  The grievance refers only to "staff using force to stop the incident" and describes specifically the staff who "lobbed" a pepper powder grenade at Plaintiff, another staff member who "sprayed his O/C cannister" at Plaintiff, causing the grenade to ignite on Plaintiff's face, and "staff [who] proceed[ed] to put the fire with their boots by kicking [Plaintiff's] face and torso."  (Doc. No. 42-4 at 8-9).  There are no facts alleging a connection between the actions of individual correctional staff and Defendant Pfeiffer, nor any claim that inadequate hiring, training, or supervision caused the correctional officers to violate Plaintiff's constitutional violations.  Therefore, Custody Grievance Log No. 71069 fails to exhaust Plaintiff's administrative remedies as to Defendant Pfeiffer.

Further, Custody Grievance Log No. 71069 fails to allege any facts sufficient to exhaust Plaintiff's state law claim under the Bane Act, Cal. Civil Code § 52.1.  California Civil Code § 52.1 ("Section 52.1"), the so-called "Bane Act," permits a private right of action for damages:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state . . .

Cal. Civ. Code § 52.1(a) (emphasis added).  A claim under Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion.  *Jones v. Kmart Corp.*, 949 P.2d 941, 942 (1998).  The essence of a Bane Act claim is that a defendant, through threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something that he had the right to do under the law or to force the plaintiff to do something that he was not required to do under the law.  *Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 472 (Cal. Ct. App. 2007) (quotation marks omitted).  Although a complaint need not use the statutory terms "threats, intimidation, or coercion," it must allege facts from which the presence of threats, intimidation, or coercion may be inferred.  *See Lopez v. County of Tulare*, 2012 WL 33244, * 11 (E.D. Cal. Jan. 6, 2012).  The Court fails to locate any language in this grievance indicating that any Defendant used threats, intimidation, or coercion to interfere with

Plaintiff's rights.  Thus, the Court finds that the FAC fails to exhaust Plaintiff's administrative remedies as to his Bane Act claim against all Defendants.

As to the remaining claims against Defendants Anderson, Martinez, and Goree, however, the Court reaches a different conclusion.  The facts alleged in Custody Grievance No. 71069 closely resemble the allegations made against Defendants Anderson, Martinez, and Goree in Plaintiff's FAC.  There, Plaintiff alleges that the three correctional supervisors and their staff:

> sprayed Plaintiff with OC Spray after Plaintiff had already submitted and complied with their orders, threw a NFDD [Noise Flash Diversionary Device] at Plaintiff's head which caused Plaintiff's mask and beard to catch on fire, sprayed Plaintiff directly in the face with additional OC spray which caused Plaintiff's face to become engulfed with flames, then brutally beat him by kicking his face and beating the bottom half of his body with batons.

(Doc. No. 8 at 10 ¶ 44).

> After Defendants doused Plaintiff in flammable OC Spray, beat Plaintiff, and thereafter set his face aflame, Defendants then wholly failed to provide Plaintiff with adequate medical care.  Plaintiff's skin was visibly and noticeably hanging off of his face following the burn, but Defendants refused to take Plaintiff directly to the infirmary.

(Doc. No. 8 at 12, ¶ 54).

While Defendants Anderson, Martinez, and Goree are not specifically named in Plaintiff's grievance, it is apparent from his subsequent custody grievance that he was seeking to identify them and the other involved staff.  (*See* Doc. No. 42-4 at 15) ("I also respectfully request the incident report to this assault with the names of all staff involved, please.").  And because the language of Plaintiff's grievance is consistent with the claims alleged in the FAC against Defendants Anderson, Martinez, and Goree for excessive use of force, deliberate indifference, negligence, battery, and failure to summon medical care, the grievance "plainly put prison officials on notice of the nature of the wrong alleged in his federal suit" *Reyes,* 810 F.3d at 659, and provided fair notice to those Defendants.[13]

Second, Defendants argue that Plaintiff failed to exhaust his administrative remedies

---

[13] As discussed above, the grievances do not allege facts that would support a Bane Act claim against any Defendant.

1  because he improperly submitted his grievance directly to the Office of Appeals, rather than the

2  Office of Grievances at his institution, as required by CDCR regulations.  However, it is also

3  uncontested that CDCR had a policy of reassigning erroneously filed grievances to the proper

4  office, as acknowledged by two CDCR officials who were deposed in this case.  *See* Cal. Code

5  Reg. tit. 15 §§ 3485(b), 3485(g)(5); (Doc. No. 56-5 at 15, 21-24); (Doc. No. 56-6 at 53-54, 65).

6  And this is in fact what OOA told Plaintiff it had done in its February 26, 2021 "Claimant

7  Grievance Claims Decision Response."  (*See* Doc. No. 42-4 at 20).  Thus, the mere fact that

8  Plaintiff did not initially file his grievance with the correct office does not establish that he failed

9  to exhaust his administrative remedies.

10       Third, Defendants argue that Plaintiff "did not submit an appeal" of the "Claimant

11  Grievance Claims Decision Response" that he received on February 26, 2021 and therefore failed

12  to fully exhaust his administrative remedies.  (Doc. No. 42-1 at 11).  However, even Defendants

13  admit that the actions of CDCR officials in processing this grievance and communicating with

14  Plaintiff were confusing and contradictory.  As an initial matter, the February 26, 2021 letter,

15  which specifically referenced Log No. 71069, stated "[o]ur office reassigned your claim

16  concerning Offender Safety and Security; Use of Force to the Office of Grievances at Kern

17  Valley State Prison," advised Plaintiff that "[t]he Office of Grievances at Kern Valley State

18  Prison will provide a response to your claim on or before 01/06/2021" and "[o]nce you receive a

19  response from Kern Valley State Prison and if you are dissatisfied with the decision, you may file

20  an appeal with the California Department of Corrections and Rehabilitation Office of Appeals."

21  (Doc. No. 42-4 at 20).  However, OOA's internal notes on the grievance indicate, "Per Chief

22  Moseley, will close log without forwarding the reassignment to OOG because OOG have already

23  addressed the inmate's concerns with log # 57803."  (Doc. No. 42-7 at 11).  In other words, two

24  important statements in the February 26, 2021 letter to Plaintiff were false: (1) that the grievance

25  had been reassigned to KVSP, and (2) that Plaintiff should expect to receive a decision from

26  KVSP, after which he could file an appeal.  In fact, the grievance had not been reassigned and

27  KVSP's OOG never issued a response.  Defendants attempt to blame Plaintiff for their own

28  omission, stating, "[i]n bypassing OOG, Plaintiff created a confusing situation and timeline that

1    ultimately resulted in no decision from OOG on Grievance 71069." (Doc. No. 57 at 2).  Surely

2    CDCR officials routinely confront duplicative and overlapping grievances and are expected to

3    nevertheless process them in accordance with their own regulations.  Moreover, to the extent

4    Defendants assert that Plaintiff should have appealed the February 26, 2021 Claimant Grievance

5    Claims Decision Response, nowhere in that document do CDCR officials advise Plaintiff that he

6    could or should appeal the Response or how to do so.  Rather, the plain language of the document

7    instructs Plaintiff to *wait for the OOG response* before filing an appeal.  (Doc. No. 42-4 at 20).

8            In circumstances where prison officials provide mistaken instructions as they did here,

9    courts have found that a Plaintiff is excused from fully exhausting an administrative remedy.  For

10   example, in *Nunez v. Duncan*, an erroneous instruction in a grievance form led plaintiff to believe

11   that he was required to review a particular "program statement" regarding strip searches before he

12   could appeal his grievance.  *Nunez v. Duncan*, 591 F.3d 1217, 1220 (9th Cir. 2010).  However,

13   the form cited the wrong program statement, one that was inapplicable and unavailable to

14   inmates.  *Id.*  The plaintiff made extensive efforts to obtain a copy of the program statement, to no

15   avail.  *Id.* at 1221.  The court ultimately found that plaintiff was excused from his failure to

16   exhaust his administrative remedies, reasoning that "[r]ational inmates cannot be expected to use

17   grievance procedures to achieve the procedures' purpose when they are misled into believing they

18   must respond to a particular document in order to effectively pursue their administrative remedies

19   and that document is then not available." *Nunez*, 591 F.3d at 1226.  Similarly, in a Third Circuit

20   case, plaintiff was told that before he could file a grievance, he "was required to first wait for

21   [prison officials'] completion of the investigation and that [he] could then pursue a grievance in

22   the event [he] was not satisfied with their findings or conclusion of the investigation." *Brown v.*

23   *Croak*, 312 F.3d 109, 111 (3d Cir. 2002).  However, prison officials never informed plaintiff that

24   the investigation was complete and after he filed suit in federal court, filed a motion for summary

25   judgment on exhaustion grounds.  The district court granted the defense motion, but the appeals

26   court reversed and remanded, finding that if plaintiff was never notified that the investigation was

27   complete, "the formal grievance proceeding . . . was never 'available' to [plaintiff] within the

28   meaning of 42 U.S.C. § 1997e." *Id.* at 113.

1    Likewise, Plaintiff was told he could file an appeal of the institution's decision as to his

2    grievance once he received a response from KVSP's Office of Grievances.  (Doc. No. 42-4 at 20).

3    But not only was no response ever issued, the grievance was never even reassigned to OOG,

4    contrary to the February 26, 2021 letter Plaintiff received.  Thus, because Plaintiff was told to

5    wait to pursue his grievance for OOG to issue a response that never came, "the formal grievance

6    proceeding . . . was never available to [him] within the meaning of 42 U.S.C. § 1997e." *Brown*,

7    312 F.3d at 113.  Accordingly, the Court finds that Plaintiff exhausted the administrative

8    remedies that were available to him as to grievance log no. 71069 as to Defendants Martinez,

9    Anderson, and Goree on both his federal and his non-Bane state law claims.

10                      2.   Log No. 57803

11    Plaintiff's second custody grievance—which is substantively very similar to his first—

12    raises some of the same exhaustion issues as his first custody grievance.  Again, Defendants

13    contend that it did not exhaust Plaintiff's administrative remedies because it does not name any

14    Defendants or describe their actions.  (Doc. No. 42 at 21-23).  Second, they contend that it was

15    untimely submitted, and third that Plaintiff failed to appeal the rejection of the grievance as

16    untimely.  (*Id*. at 20-21).

17    As with Custody Grievance Log No. 71069, the Court finds that this grievance adequately

18    described the actions attributed to Defendants Martinez, Anderson, and Goree to provide fair

19    notice of the federal claims later made against them, as well as the state law claims for battery and

20    negligence.  The grievance states that unnamed correctional staff lobbed a pepper powdered

21    grenade that detonated near Plaintiff's face, that another officer sprayed with him OC spray,

22    causing his face mask and beard to be engulfed in flames, and that other officers used their feet

23    and baton to strike him while he was trying to put out the fire.  (*See* Doc. No. 42-4 at 14-15).

24    This are the same actions that Plaintiff alleges against Anderson, Martinez, and Goree in the

25    FAC.  (*See generally* Doc. No. 8).  Thus, as a preliminary matter the Court finds the grievance

26    contained sufficient information to exhaust these claims as to those Defendants.

27    However, as to Plaintiff's state law claims for violation of the Bane Act and failure to

28    summon medical care, the Court finds that Custody Grievance Log No. 57803 does not provide

1    fair notice to any Defendant sufficient to exhaust Plaintiff's administrative remedies regarding

2    those claims.  Unlike his previous custody grievance, this one does not mention any failure to

3    provide him immediate medical care in the wake of the October 9, 2020 incident.  Rather it only

4    alleges that Plaintiff was "misdiagnosed by institution medical staff that resulted in nearly 2

5    weeks of constant pain . . ."  (Doc. No. 42-4 at 15).  Nor does it allege facts indicating that any

6    individual used threats, intimidation, or coercion to violate Plaintiff's constitutional rights,

7    sufficient to provide fair notice of a Bane Act claim.  Thus, the grievance fails to exhaust

8    Plaintiff's administrative remedies as to those state law claims.

9            The Court finds there is a genuine dispute as to whether Plaintiff timely submitted this

10   grievance.  In his declaration, Plaintiff asserts that he always submitted his grievances the day that

11   he signed them, which in this case was November 6, 2020.  It is uncontested that Plaintiff's

12   grievance would have been deemed timely if logged as submitted on November 6, 2020.  For

13   reasons CDCR officials cannot explain, however, the grievance was not processed until

14   November 13, 2020, making it untimely.  Further, there is evidence in the record that the time

15   between submission and receipt of a grievance could be as much as eight days, perhaps

16   exacerbated by delays related to the COVID-19 pandemic.[14]  However, even assuming Plaintiff

17   timely submitted his grievance, it is uncontested that he did not appeal the November 18, 2020

18   rejection of his claim as untimely.  CDCR regulations are clear that, "[c]ompletion of the review

19   process by the Institutional or Regional Office of Grievances resulting in a decision of 'denied,'

20   'granted,' 'no jurisdiction,' 'redirected,' 'reassigned,' or 'rejected' in accordance with subsections

21   (g)(1) through (g)(6) of this section does not constitute exhaustion of all administrative remedies

22   available to a claimant within the department."  Cal. Code Regs. tit. 15, § 3483(l)(1).  Here,

23   because there is no dispute that Plaintiff did not appeal the rejection notice, he failed to exhaust

24   his administrative remedies as to Custody Grievance Log No. 57803.

25           Accordingly, for the reasons set forth above, it is hereby **ORDERED**:

26           Defendants' Motion for Judicial Notice (Doc. No. 42-3) is **GRANTED**.

27

28   [14] For example, Plaintiff's Health Care Grievance No. 20000877 was submitted on October 14, 2020 and
     received by CCHCS on October 22, 2020.  (Doc. No. 42-6- at 11).

It is further **RECOMMENDED**:

1. Defendants' Motion for Summary Judgment (Doc. No. 42) be **GRANTED in part and DENIED in part.**

2. The Motion be **GRANTED** as to Defendants Pfeiffer and Felder on all federal and state law claims and GRANTED as to Defendants Martinez, Anderson and Goree only on the Bane Act state law claim.

3. Defendants' Motion for Summary Judgment (Doc. No. 42) be **DENIED** as to Defendants Martinez, Anderson, and Goree on Plaintiff's Eighth Amendment claims for excessive use of force, failure to intervene, and deliberate indifference to medical care[15] and state law claims for battery, negligence, and failure to summon medical care claims.

**NOTICE TO PARTIES**

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being served with these findings and recommendations, a party may file written objections.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


Dated:   August 29, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

---

[15] The medical indifference claims against Defendants Martinez, Anderson, and Goree stem only from the time immediately after the incident until the time that Plaintiff was seen by medical staff later that same day.